FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 JAN -4  P 12: 46

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DISHMAN &BENNETT SPECIALITY COMPANY, INC.** | **CIVIL ACTION NO. 05-0955** |
| **VERSUS** | |
| **FIDELITY SECURITY LIFE INSURANCE COMPANY, ET.AL.** | **SECTION M** |

### ORDER

Before the Court is Defendant Joseph Keating's Motion for Summary Judgment which came for hearing on December 14, 2005, on the briefs. After consideration of the motion, the opposition, and the applicable law, the Court **DENIES** the Motion.

**FACTS:**

`Dishman & Bennett Specialty Company, Inc.(Dishman) is an oilfield service company in Terrebonne Parish, Louisiana. As a fringe benefit for its employees, Dishman established a plan of health insurance coverage administered by American Trust Administrators, Inc. (American Trust). Under the terms of the plan, certain funds were deposited on behalf of each employee participating in the plan into a general escrow account, from which medical bills incurred by participating employees were paid. To protect the plan against large, unexpected medical expenses, a policy of reimbursement

___ Fee_____
___ Process_____
_X_ Dktd_____
_/_ CtRmDep_____
___ Doc. No._____

insurance was purchased from Fidelity Security Life Insurance Company (Fidelity).

Sometime prior to August 2002, Dishman determined to seek another health care plan, and chose a Blue Cross plan offered by defendant Joseph Keating, an insurance agent. A new plan was set up to be effective August 1, 2002. In connection with binding the Blue Cross coverage, the American Trust plan was terminated effective August 1, 2002. By letter dated August 12, 2002, American Trust advised Dishman that they would continue to pay claims for 90 days following termination. Dishman signed the letter and returned it, in accordance with the terms of the correspondence.

However, approximately one month after the termination of the American Trust plan, Dishman employees began receiving notices from health care providers that medical bills were not being paid. Fidelity allegedly refused to pay the excess claims involving medical expenses incurred but not paid before Dishman terminated its participation in the American Trust plan. As a result, several health providers instituted collection procedures against Dishman. More than a year later, Dishman, with assistance of counsel, reached a large settlement with an unpaid medical provider.

Dishman alleges that he realized at that time that Defendant Keating played a key role in causing the lapse in coverage when he sold the Blue Cross policy to Dishman without advising him of the potential lapse in coverage. Dishman argues that Keating, an insurance expert, had a duty to explain in detail the consequences of an early termination date to his new clients and failed to do so.

Defendant Keating brings this motion for summary judgment alleging that any acts,

omissions or neglects occurred before August 1, 2002, the date on which Dishman terminated the American Trust health insurance plan, and that suit was not filed until February 22, 2005.  He argues that the relevant Louisiana statute required Dishman to file the suit within one year in which it discovered or should have discovered that it had a claim against Keating and that Dishman had adequate information no later than November 2002, when it was clear that coverage under the American Trust plan was being denied.  Keating also presents a letter dated July 9, 2003, wherein counsel for Dishman wrote to the Lafayette General Medical Center stating that, "Unfortunately, my client was not advised properly on their coverages of their employee and the responsibilities and liabilities when changing insurance companies at that particular time."

**ANALYSIS:**

Both parties agree that the claim is governed by the provisions of La. R.S. 9:5606, which provides as follows, in pertinent part:

"*A. No action for damages against any insurance agent, broker, solicitor, or other similar licensee under this state, whether based upon tort or breach of contract, or otherwise, arising out of an engagement to provide insurance service shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect,* **or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered.** *However, even as to actions filed within on year from the date of such discover, in all events such actions shall be filed at the latest within three years from the date of the*

3

*alleged act, omission, or neglect. . . .*

*"D. The one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive periods within the meaning of Civil Code Article 3458 and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended."*

Louisiana law provides that prescription statutes are strictly construed against prescription and in favor of the claim sought to by extinguished by it. Bailey v. Khoury 891 So.2d 1268 (La. 2005); Bouterie v. Crane, 616 So. 2d 657, 660 (La.1993). The burden of proof on the prescription issue lies with the party asserting it unless the plaintiff's claim is barred on its face, in which case the burden shifts to the plaintiff. Bailey at1275.

As Dishman's petition was brought before the three-year peremptive period provided in part D, we look to part A to determine whether or not Plaintiff's claim is barred on its face. The petition was filed more than one year after the date of the alleged negligence of Keating; however, Dishman alleges that it was filed within one year of its discovery of the negligence. Thus, the issue before the Court is a determination of when Dishman knew or should have known that Keating was responsible for the lapse in coverage.

Prescription principles should not be used "to force a person who believes he may have been damaged in some way to rush to file suit against all parties who might have caused that damage." *Id.* at 1285, *citing* Jordan v. Employee Transfer Corp., 509 So. 2d 420, 423 (La.1987). The Court in Jordan found that ". . . a plaintiff will be responsible to seek out those whom he believes may be responsible for a specific injury. When

4

prescription begins to run depends on the reasonableness of a plaintiff's action or inaction." In <u>Jordan</u>, the court found that prescription did not begin to run until the plaintiffs had a reasonable basis to pursue a claim against a specific defendant. *Id.* at 424.

Whether or not Dishman was reasonable in waiting to file suit against Keating is "a fact-intensive inquiry." *See* <u>Bailey</u> at 1284. Thus, summary judgment is not appropriate.

Accordingly, Defendant's Motion is **DENIED**.

New Orleans, Louisiana, this 4th day of Jan., 2006.

_____
Peter Beer
United States District Judge